UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:22-cv-23938-SCOLA/GOODMAN

BARBARA ALEXIS et al.,

      Plaintiffs,

v.

NOMI HEALTH, INC, a Delaware Corporation, and MEDX STAFFING INC., a Utah Corporation,

      Defendants.

**DEFENDANTS NOMI HEALTH, INC. AND MEDX STAFFING, INC.'S MOTION TO COMPEL ARBITRATION OF SHAREKA HUMPHERY-PACE'S AND JORGE GUILLERME'S CLAIMS OR, IN THE ALTERNATIVE TO DISMISS THEM UNDER RULE 12(B)(6)**

**I.    INTRODUCTION**

Opt-in Plaintiffs Shareka Humphery-Pace and Jorge Guillerme entered into Independent Contractor Agreements ("ICAs") that contain independently enforceable and binding arbitration provisions precluding their participation in this action. Much like the fifty-four Arbitration Plaintiffs discussed in Defendants' prior motion to compel (Dkt. 15), Humphery-Pace and Guillerme have joined this lawsuit in breach of those agreements. Like those prior individuals, Humphery-Pace and Guillerme must be held to their agreements and be required to litigate their claims, if at all, in individual arbitrations. And like those prior individuals, even were they somehow able to avoid their binding arbitration agreements (they are not), their claims still must be dismissed because the operative Complaint in this action fails to plead facts plausibly showing that they were employees or that either Defendant was their employer. For those reasons, which will be discussed in greater detail below, Humphery-Pace and Guillerme must be compelled to

individually arbitrate their claims or, alternatively, their claims must be dismissed under Rule 12(b)(6).

## II.     HUMPHERY-PACE AND GUILLERME MUST INDIVIDUALLY ARBITRATE THEIR CLAIMS

### A.     Standard of Review for Motions to Compel Arbitration

Motions to compel arbitration are reviewed under "a summary judgment-like standard." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). Once a defendant presents evidence that a plaintiff entered into an agreement to arbitrate, the plaintiff must demonstrate a "genuine dispute . . . concerning the formation of such an agreement" if intending to challenge enforceability. *Id.* A dispute is not genuine "if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Id.* (quoting *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014)). "[C]onclusory allegations without specific supporting facts have no probative value" in resisting a motion to compel arbitration. *Id.* (quoting *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000)). "As a result of the well-established federal policy favoring arbitration, the burden is on the party opposing arbitration to prove to the court that arbitration is improper." *Kozma v. Hunter Scott Fin., L.L.C.*, No. 09-cv-80502-KAM-LRJ, 2010 WL 724498, at *2 (S.D. Fla. Feb. 25, 2010).

### B.     Humphery-Pace and Guillerme Must Be Held to Their Binding, Enforceable Arbitration Agreements.

Humphery-Pace and Guillerme currently assert claims against MedX and Nomi on the theory that they were "joint employers." (Dkt. 1 ¶ 67.) MedX contracted with each individual through an ICA. (Second Declaration of Sariah Tuisaula ("Second Tuisaula Decl.") ¶¶ 5–6 & Exs. A-1 & A-2.) Under the ICA, MedX engaged each individual to perform the respective services that now allegedly give rise to their claims. (*Id.*; *see also* Dkt. 1 ¶ 3.) The ICA also includes an arbitration provision, which states:

2

>Any controversies arising out of the terms of this Agreement or its interpretation shall be settled in an arbitration venue chosen by both parties in accordance with the rules of the American Arbitration Association, and the judgment upon award may be entered in any court having jurisdiction.

(ICA at 6.)

Both the Federal Arbitration Act[1] and the Florida Arbitration Act[2] embody a strong policy favoring the enforcement of arbitration agreements. *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014) (Federal Arbitration Act); *13 Parcels LLC v. Laquer*, 104 So. 3d 377, 380 (Fla. 3d DCA 2012) (Florida Arbitration Act). When reviewing a motion to compel arbitration, courts consider three factors, "1) [w]hether there is a valid, written agreement to arbitrate; 2) [w]hether there is an arbitrable issue; and 3) [w]hether the right to arbitrate was waived." *Booth v. S. Wine & Spirits of Am., Inc.*, No. 14-22357-CIV, 2014 WL 5523123, at *2 (S.D. Fla. Oct. 31, 2014). Each of these considerations, which will be discussed below, requires that the Humphery-Pace's and Guillerme's claims be sent to individual arbitration.

> 1. *Humphery-Pace and Guillerme Entered into Valid Arbitration Agreements.*

To start, Humphery-Pace and Guillerme entered into valid, written agreements to arbitrate. Courts generally apply ordinary state law principles that govern contract formation when determining whether a valid agreement to arbitrate exists. *De Pombo v. IRINOX N. Am., Inc.*, No. 20-CV-20533, 2020 WL 2526499, at *5 (S.D. Fla. May 18, 2020). Here, and Humphery-Pace's and Guillerme's agreements provide that they are governed by Florida law. (ICA at 6 ["Choice of Law"].)

---

[1] It cannot be disputed that activities aimed at preventing the spread of the COVID-19 disease "affect" interstate commerce, such that the Federal Arbitration Act applies. In fact, Plaintiffs admit that "Nomi Health, Inc. and Med[X] Staffing Inc. are engaged in activities that relate to and involve interstate commerce." (Dkt. 1 ¶ 70.)

[2] The Court need only address enforceability under the Florida Arbitration Act if arbitration is not compelled under the Federal Arbitration Act. However, arbitration is required under both statutes.

3

"In Florida, a valid contract requires offer, acceptance, consideration and sufficient specification of essential terms." *De Pombo*, 2020 WL 2526499, at *5. Assent can be manifested in several ways, including by the acts, conduct, words, or performance of the party. *Fi–Evergreen Woods, LLC v. Robinson*, 135 So.3d 331, 336 (Fla. 5th DCA 2013); *Consol. Res. Healthcare Fund I, Ltd. v. Fenelus*, 853 So.2d 500 (Fla. 4th DCA 2003).

In the case of arbitration provisions, they are to be treated as separate contracts as a matter of law—even when contained in a broader agreement (such as an ICA). *See John B. Goodman LP v. THF Constr.*, Inc., 321 F.3d 1094, 1097–98 (11th Cir. 2003) (holding that, because "arbitration clauses [are] separable from the contracts in which they [are] included," the court must confine its validity analysis to the arbitration agreement itself). That is true under both the Federal Arbitration Act and the Florida Arbitration Code. *Id.* And it means that even if a plaintiff raises a challenge to the validity or enforceability of an ICA *as a whole*, that challenge is immaterial, as this Court is permitted only to consider challenges to the agreement to arbitrate *specifically*. *See, e.g.*, *Rent-a-Center W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) ("[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."). In other words, the ultimate question is simply: is there a valid agreement *to arbitrate*.

MedX offered both Humphery-Pace and Guillerme the arbitration provisions by providing them for signature. (ICA at 7.) Both Humphery-Pace and Guillerme accepted their respective offers—and demonstrated their assent and intent to be bound—by affixing their signatures to each documents and by working after receiving the same. (Second Tuisaula Decl. ¶ 6 Exs. A1 & A-2;

*see also, e.g.*, *De Pombo*, 2020 WL 2526499, at *6 (holding that a plaintiff's signature after an agreement was provided by the defendant established acceptance); *Sundial Partners, Inc. v. A. St. Capital Mgt. LLC*, 8:15-CV-861-T-JSS, 2016 WL 943981, at *3–4 (M.D. Fla. Jan. 8, 2016) (collecting cases finding acceptance of an agreement through performance, and determining that plaintiff's continued performance after receipt of the agreement demonstrated assent to the arbitration provision in that agreement).) Moreover, the agreements to arbitrate are supported by sufficient consideration in that (1) the arbitration obligations were mutual and (2) both Humphery-Pace and Guillerme were permitted to, and did, work for MedX after entering into the agreements. *See, e.g.*, *Bhim v. Rent-A-Ctr., Inc.*, 655 F. Supp. 2d 1307, 1312–13 (S.D. Fla. 2009) ("Mutually binding promises to arbitrate provide consideration for one another, and give rise to an enforceable arbitration agreement. . . . [Plaintiff's] continued employment . . . provided further consideration in support of the Arbitration Agreement.").

Finally, with respect to the element of "sufficient specification of essential terms," and noting that the arbitration provision *within* the ICA is the proper focus, *see John B. Goodman Limited Partnership*, 321 F.3d at 1098, there can be no doubt that the Humphery-Pace's and Guillerme's agreements contain all of the elements necessary to form a binding agreement to arbitrate.

Consequently, Humphery-Pace and Guillerme entered into enforceable arbitration agreements under Florida law.

2.   *Humphrey-Pace's and Guillerme's Claims Are Arbitrable.*

Further, Humphery-Pace's and Guillerme's claims are arbitrable because (1) their claims all fall within the scope of the arbitration agreement, and any event, issues pertaining to scope must be resolved by an arbitrator, and (2) Defendants are entitled to enforce the agreements.

      a.    <u>Issues of Scope Were Delegated to the Arbitrator for Determination, and in Any Event, the Claims Fall Within the Scope of the Agreements.</u>

To the extent there is any dispute as to whether the claims at issue fall within the scope of the arbitration provisions, the parties expressly delegated such issues to an arbitrator by incorporating the "rules of the American Arbitration Association." (ICA at 6.) "[I]nitial determinations regarding an arbitration provision's scope, existence, and validity are delegated to an arbitrator if the AAA rules are invoked . . . ." *Alvarado v. Robo Enters., Inc.*, No. 6:15-cv-1420-Orl-40KRS, 2016 WL 11566331, at *3 (M.D. Fla. June 2, 2016) (citing *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005)). Thus, any disputes regarding the scope of the agreements must be resolved by arbitrators.

Regardless, even if the Court had the power resolve the issue (and it does not), Humphery-Pace's and Guillerme's claims are covered by their arbitration agreements. Specifically, the agreements provide that each agreed to arbitrate "[a]ny controversies arising out of the terms of this Agreement." (ICA at 6.) Each ICA explicitly provides that it is the document under which MedX engaged each individual for services as an independent contractor—the classification Humphery-Pace and Guillerme now challenge and the services they now contend entitle them to overtime compensation under the FLSA. Such claims are plainly within the scope of the arbitration provision.

      b.    <u>Defendants are Entitled to Enforce the Agreements.</u>

Second, Defendants are entitled to enforce the agreements. Because the arbitration provisions cover "*any* controversies arising out of the terms of the [ICAs]" (ICA at 7), MedX, as a party to the Agreement (i.e., the offeror), may compel the claims against *all Defendants* to arbitration. *See, e.g., Altenhofen v. S. Star Central Gas Pipeline, Inc.*, No. 4:20-cv-00030-JHM, 2020 WL 6877575, at *5–8 (W.D. Ky. Nov. 23, 2020) (granting signatory's motion to compel

6

claims against nonsignatory to arbitration when agreement was "broad enough to cover [the plaintiff's] claim against [a nonsignatory]"); *Snow v. Silver Creek Midstream Holdings, LLC*, 467 F. Supp. 3d 1168 (D. Wyo. Apr. 14, 2020) (similar).

Further, even were MedX not able to compel the claims against Nomi to arbitration, Nomi is entitled to compel the claims to arbitration as a third party under Florida's doctrine of equitable estoppel. Under that doctrine, third-party enforcement of an arbitration agreement is authorized in two circumstances: "First, equitable estoppel applies when the signatory to the contract relies on the terms of the contract to assert his or her claims against the non-signatory. . . . Second, equitable estoppel applies when the signatory raises allegations of concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Gunson v. BMO Harris Bank*, N.A., 43 F. Supp. 3d 1396, 1401 (S.D. Fla. 2014).

Courts regularly apply the doctrine of equitable estoppel when a plaintiff has alleged FLSA claims against the "Defendants," which included entities that were parties and nonparties to the agreement. *Maldonado v. Mattress Firm, Inc.*, No. 8:13-CV-292-T-33AEP, 2013 WL 2407086, at *4 (M.D. Fla. June 3, 2013). Because such allegations "fail[] to distinguish between the actions of the Defendants in [plaintiff's] FLSA Complaint," they plainly require a conclusion of concerted misconduct warranting the application of equitable estoppel. *Id.* at *5, 7; *see also Citi Cars, Inc. v. Cox Enters., Inc.*, No. 1:17-cv-22190-KMM, 2018 WL 1521770, at *11 (S.D. Fla. Jan. 22, 2018) (applying equitable estoppel when "each claim is lodged against all four Defendants without differentiation").

Here, Humphery-Pace's and Guillerme's only basis for imputing liability to Nomi is through arguing that Nomi was her "joint employer[]" with MedX, and by imputing MedX's alleged conduct (including the legal sufficiency of its classification and pay decisions) to Nomi.

7

(*See* Dkt. 1 ¶ 67.) In fact, Humphery-Pace's and Guillerne's argument, by necessary implication, is that MedX's conduct—its alleged classification of them as independent contractors and failure to pay them overtime wages—*is* Nomi's conduct. (*See, e.g.*, Dkt. 1 at ¶¶ 4, 5, 79, 80, 86 (all referencing "Defendants" as a combined entity with a singular set of policies, pay practices, etc.).) Because Humphery-Pace's and Guillerme's claims against Nomi, if true, would plainly rest on "substantially interdependent and concerted misconduct" with MedX, Nomi is entitled to compel those claims to arbitration under the doctrine of equitable estoppel. *See, e.g.*, *Green v. Mission Health Communities, LLC*, No. 3:20-cv-00439, 2020 WL 6702866, at *8 (M.D. Tenn. Nov. 13, 2020) (holding that it would be "especially inequitable" to permit a plaintiff to avoid arbitration against a non-party to an agreement "when the plaintiff alleges joint employment" with a party to the agreement). Thus, each Defendant is entitled to compel the claims of Humphery-Pace and Guillerme to arbitration.

### 3. *Defendants Have Not Waived the Right to Arbitrate.*

Further, Defendants have not waived the right to arbitrate. The "heavy burden" of proving waiver lies with the Humphery-Pace and Guillerme, *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1200 n.17 (11th Cir. 2011), and they have not asserted—and cannot assert—any plausible waiver argument whatsoever. That is particularly true where, as here, Defendants have moved to compel arbitration promptly after Humphery-Pace and Guillerme opted into this action.

### 4. *Arbitration Must Be Compelled on an Individual Basis, and Humphery-Pace's and Guillerme's Claims Should Be Stayed.*

Finally, Defendants observe that Humphery-Pace and Guillerme must be *separately* compelled to arbitrate their claims on an *individual* (not a joint or collective) basis. The agreements do not expressly permit multi-plaintiff, class, or collective arbitrations, which means that they are not allowed. *See Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U. S. 662 (2010). "[C]ourts

8

may not confer consent to participate in class arbitration absent an affirmative 'contractual basis for concluding that the party agreed to do so.'" *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1419 (2019). Here, because no such agreement to a multi-plaintiff arbitration exists, Humphery-Pace and Guillerme must be compelled to arbitrate their claims individually.

Further, after determining that a matter must be referred to arbitration a court "shall on application of one of the parties stay the trial of the action until such arbitration has been held in accordance with the terms of the agreement." *See, e.g.*, 9 U.S.C. § 3. Thus, this Court should stay this matter pending the resolution of the Humphery-Pace's and Guillerme's individual arbitrations.

### III. ALTERNATIVELY, SHAREKA-HUMPHERY'S AND GUILLERME'S CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(6).

To the extent either of Shareka-Humphery's and Guillerme's claims is not subject to arbitration, those claims must still be dismissed because they failed to plead any plausible FLSA claim under Rule 12(b)(6). Defendants have already detailed the pleading deficiencies of the Complaint in prior briefing. (Dkts. 15, 26.) Nevertheless, for the sake of completeness, Defendants restate the arguments below.

#### A. Standard of Review for 12(b)(6) Motions

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face." That is, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Mere "legal conclusions" are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680.

**B.        The Complaint Failed to Plead Adequate Facts Establishing that Humphery-Pace or Guillerme Were an "Employee" of Either Defendant Under the FLSA.**

As a threshold matter, a plaintiff can only assert a claim under the FLSA if she qualifies as an "employee" under the statute, and if her claims are asserted against an "employer." *See, e.g.*, *Nieman v. National Claims Adjusters, Inc.*, 775 Fed. Appx. 622, 624 (11th Cir. 2019) ("The protections of the FLSA extend only to 'employees.' . . . The FLSA does not cover 'independent contractors.'"); 29 U.S.C. 203(d)–(e) (defining "employer" and "employee"). The Complaint's allegations fail on both fronts. First, it failed to include facts supporting a plausible inference that either Humphery-Pace or Guillerme an employee under the FLSA, as a matter of law. Second, it failed to include facts permitting a plausible inference that either Defendant was a joint employer of Humphery-Pace or Guillerme under the FLSA.

*1.        The Complaint Failed to Include Facts Permitting an Inference that Humphery-Pace or Guillerme Were "Employees" Under the FLSA.*

As an initial matter, the Complaint failed to state plausible claims under the FLSA because it did not include allegations sufficient to permit an inference that Humphery-Pace and Guillerme were employees within the meaning of the FLSA. Historically, courts in the Eleventh Circuit have applied a six-factor economic-realities test to assess whether an individual is an employee or an independent contractor under the FLSA. *Herrera v. Mattress Firm, Inc.*, No. 17-22048-CIV, 2017 WL 4270619, at *7 (S.D. Fla. Sept. 26, 2017). That test looks to:

(1)    the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
(2)    the alleged employee's opportunity for profit or loss depending upon his managerial skill;
(3)    the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
(4)    whether the service rendered requires a special skill;
(5)    the degree of permanency and duration of the working relationship; [and]
(6)    the extent to which the service rendered is an integral part of the alleged employer's business.

*Id.*

More recently, however, the U.S. Department of Labor—after a notice-and-comment period—enacted a rule defining independent contractor status under the FLSA.[3] *See Independent Contractor Status Under the Fair Labor Standards Act*, 86 Fed. Reg. 1168 (Jan. 7, 2021). Under the rule, courts first look to two core factors: "(i) [t]he nature and degree of control over the work" and "(ii) [t]he individual's opportunity for profit or loss." *Id.* at 1246–47. When those factors tilt toward the same classification that is generally the correct classification for the worker. *Id.* at 1246. When the factors tilt in opposite directions, a court should then look to "(i) [t]he amount of skill required for the work[;] . . . (ii) [t]he degree of permanence of the working relationship between the individual and the potential employer[; and] . . . (iii) [w]hether the work is part of an integrated unit of production." *Id.* at 1247.

For present purposes, the Court need not decide which standard governs the analysis because the Complaint failed to plead sufficient facts under *either* test. The Complaint repeatedly includes the conclusory assertion that "all employees [who] were misclassified as independent contractors by Defendants," along with similarly unadorned assertions of "employment" (Dkt. 1 ¶¶ 1, 3, 6, 7, 22, 31, 38, 48, 51, 54, 58, 61, 73–74, 76, 78, 84, 94–95). But a bald claim that one is an employee—without facts plausibly supporting that legal conclusion under the applicable standard—is inadequate to survive a motion to dismiss. *See, e.g.*, *Davison v. Dos Amigos Taqueria LLC*, No. 12-62515-CIV-DIMITROULEAS, 2013 WL 12131317, at *2 (S.D. Fla. June 20, 2013) (granting a motion to dismiss and holding that "Plaintiffs' legal conclusion that [the defendant] was an employer of Plaintiffs under the FLSA and thus liable for the alleged FLSA violations"

---

[3] Although the DOL subsequently attempted to withdraw the rule, that attempt was invalidated by a federal court, and the rule was thus effective as of March 8, 2021. *See Coalition for Workforce Innovation v. Walsh*, No. 1:21-CV-1302022-MAC, 2022 WL 1073346 (E.D. Tex. Mar. 14, 2022).

was "too vague and unsupported" to establish liability because it was "a mere recitation of the statutory language"); *Derolf v. Risinger Bros. Transfer, Inc.*, 259 F. Supp. 3d 876, 879 (C.D. Ill. 2017) ("It is not sufficient to simply say one is an employee; indeed, mere labels and formulaic language are not enough to satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a).").

Despite that an adequate Complaint requires facts plausibly showing that Humphery-Pace and Guillerme were employees under one of the multi-factor tests outlined previously, the Complaint failed to address any of those factors.[4] The Complaint included no allegations as to control, opportunities for profit or loss, permanence, investment in equipment or materials, skill, or integrality for Humphery-Pace or Gullerme. It thus did not plead facts that permit a plausible conclusion that either was an employee, as a matter of law. Because the Complaint did not include any facts regarding these independent elements, it failed to state a plausible FLSA claim, and those claims must be dismissed. *See, e.g.*, *Luxama v. Ironbound Express, Inc.*, No. 11-2224 (ES), 2013 WL 3286081, at *3–8 (D.N.J. June 27, 2013) (granting a motion to dismiss when Plaintiff failed to plead adequate facts to suggest employment under the economic reality factors); *Derolf*, 259 F. Supp. 3d at 879–84 (same).

> 2. *The Complaint Is a Shotgun Pleading that Failed to Plead Adequate Facts to Suggest that Nomi Was a Joint Employer Under the FLSA.*

The Complaint also does not include facts supporting that either Defendant qualifies as a *joint employer* of Humphery-Pace or Guillerme, as a matter of law. As an initial matter, the Complaint is an impermissible shotgun pleading in at least two respects. First, it committed the

---

[4] For the named plaintiffs, the Complaint does provide dates of supposed "employment," which bears on the permanence factor (albeit not, in all instances, as indicative of employment, as alleged). (Dkt. 1 ¶ 76.) However, the Complaint contains no such allegations as to Humphery-Pace or Guillerme.

"mortal sin" of including "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Bach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015); *see also* Dkt. 1 ¶¶ 82, 92 ("repeat[ing] and re-alleg[ing] each of the paragraphs above" in each count). Second, it committed the "sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which act or omissions." *Weiland*, 792 F.3d at 1323. Indeed, although the Complaint purported to assert counts against each Defendant separately, *every* factual allegation in *each* count referred to "Defendants" collectively, without specifying what each Defendant allegedly did individually. Based on that pleading deficiency alone, which would preclude any individualized assessment of joint employment as to each Defendant at the pleading stage, all claims must be dismissed.

But even were the shotgun-pleading problem ignored (and it should not be), the Complaint remains deficient because the facts that have been alleged—albeit in shotgun fashion—still fail to support the conclusion that Nomi was Humphery-Pace's or Guillerme's joint employer. In determining whether a defendant qualifies as a joint employer as a matter of law, courts look to the alleged joint employer's (1) nature and degree of control over the plaintiff; (2) supervision, direct or indirect, of the plaintiff's work; (3) right, directly or indirectly, to hire, fire, or modify employment conditions; (4) power to set pay rates or methods; (5) preparation of payroll and payment of the plaintiff's wages; (6) ownership of the facilities where the work occurred; (7) nature of the business, including whether the plaintiff's work is integral to it; and (8) relative investment in equipment and facilities. *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1178–81 (11th Cir. 2012).

Apart from the allegation that "Defendants" paid Plaintiffs, the Complaint addressed not one of the other factors outlined above. Thus, the claim against Nomi is inadequately pled and must be dismissed. *See e.g.*, *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 945–46 (N.D. Cal. 2019) (dismissing FLSA claims in part due to the lack of allegations in support of joint employment factors); *Steier v. Highland Operating Co.*, No. 4:16-CV-3184-RGK, 2017 WL 384295 (D. Neb. 2017) (dismissing FLSA claims where plaintiffs complaint did not "include facts describing the 'economic reality' of the plaintiff's employment"); *Attanasio v. Community Health Sys., Inc.*, 863 F. Supp. 2d 417, 425 (M.D. Penn. 2012) (dismissing FLSA claims where plaintiffs pleadings were "boilerplate" and "omit[ed] particularized assertions explaining the specific role" an alleged parent corporation played in regard to the plaintiffs); *Al-Quraan v. 4115 8th St. NW, LLC*, 113 F. Supp. 3d 367, 370 (D.D.C. 2015) (dismissing FLSA claims where there were no allegations related to purported employer's involvement in managing employee work schedules or conditions of employment, maintaining employment records, or firing/hiring power); *Jones v. Am. Airlines, Inc.*, No. 5:08-CV-236-BR, 2008 WL 9411160 (E.D.N.C. 2008) (dismissing FLSA claims where plaintiffs failed to sufficiently allege that entity was their joint employer).

## IV. CONCLUSION

For the reasons articulated above, Defendants MedX and Nomi respectfully request that the Court compel Humphery-Pace and Guillerme to individual arbitrations and stay their claims, pending resolution of the same. Alternatively, the Court should dismiss the action pursuant to Rule 12(b)(6) due to it shotgun nature and inadequate allegations concerning statutory "employment."

### CERTIFICATION OF PRE-FILING CONFERENCE

In accordance with Local Rule 7.1(a)(3), Defendants' counsel certifies that it emailed all counsel for Plaintiffs on January 19, 2023, who subsequently confirmed their opposition to the motion to compel arbitration. Defendants note that their alternative motion to dismiss for failure

to state a claim is expressly exempted from the pre-filing conference requirement of Local Rule 7.1(a)(3).

Respectfully submitted this 23rd day of January 2023.

By: */s/ Andrew M. McKinley*
Andrew M. McKinley
Florida Bar No. 122069
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, GA 30309-3958
Telephone:  (404) 885-1500
Facsimile:  (404) 892-7056
amckinley@seyfarth.com

*Attorney for Defendant Nomi Health, Inc. and MedX Staffing, Inc.*